EDW C LEVY CO v MARINE CITY ZONING BOARD OF APPEALS

Docket No. 296023. Submitted May 4, 2011, at Detroit. Decided July 19,
2011, at 9:00 a.m.

The St. Clair County Road Commission entered into a five-year lease
of property it owns on the St. Clair River with Detroit Bulk
Storage in August 2007. In 1999, Marine City had rezoned the
property from I-2 to a waterfront recreation and marine classifi-
cation. The property had retained its industrial status as a prior
nonconforming use and the road commission had continued to use
it for the storage and distribution of aggregate, rock salt, and
calcium chloride. A condition of the lease required Detroit Bulk
Storage to obtain a business license from Marine City. In order to
obtain a license, the city manager was required to certify that the
proposed use was allowed under the zoning ordinance or consti-
tuted a prior nonconforming use. The city manager certified that
the proposed use was allowed and the Marine City Commission
granted Detroit Bulk Storage a conditional business license. Edw.
C. Levy Co. and Levy Indiana Slag Co., doing business as St. Clair
Aggragates (collectively "SCA"), which had unsuccessfully sought
to lease the property from the road commission, filed an appeal
with the five-member Marine City Zoning Board of Appeals,
seeking a review of the city manager's certification of the proposed
use of the property. The zoning board of appeals, by a three-to-two
vote, denied SCA's appeal and affirmed the city manager's decision
in March 2008. SCA appealed the decision of the zoning board of
appeals in the St. Clair Circuit Court. The court, Peter E. Deegan,
J., allowed the road commission and Detroit Bulk Storage to
intervene in the action. The court held that one of the members of
the zoning board of appeals, who was also a member of the Marine
City Commission, should have recused himself from voting. The
court vacated the March 2008 decision of the zoning board of
appeals and remanded the matter to the zoning board of appeals
for a new vote based on the same record made before the board at
its March 2008 hearing. A new hearing and vote occurred on June
3, 2009. Only three members were present at the meeting and the
board voted two-to-one to reverse the city manager's decision and
grant SCA's appeal. SCA filed an amended claim of appeal in the
circuit court, incorporating the June 2009 ruling of the zoning

board of appeals. The court ruled that MCL 125.3603(2) required a majority of the members of the zoning board of appeals, not just a majority of those present when a vote is taken, to agree in order to overturn the city manager's decision. The court, noting that the June 2009 vote to overturn the city manager's decision had been by only two members of the zoning board of appeals, held that the city manager's decision was still effective. The court considered the record produced by the zoning board of appeals and affirmed the zoning board of appeals' decision affirming the city manager's decision. The Court of Appeals, BORRELLO, P.J., and O'CONNELL and M. J. KELLY, JJ., denied leave to appeal in an unpublished order, entered May 3, 2010 (Docket No. 296023). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 488 Mich 868 (2010).

The Court of Appeals *held*:

1. The unambiguous language of MCL 125.3603(2) requires a majority of the members of the zoning board of appeals to reverse the certification granted by the city manager. Three out of the five members of the board had to vote to reverse the certification. The vote of two members to reverse the certification was not sufficient. The circuit court properly interpreted the statute.

2. The circuit court did not err by holding that substantial evidence supported the decision of the zoning board of appeals to deny SCA's appeal. There was no competent evidence that Detroit Bulk Storage's use of the property would be an expansion, extension, or enlargement of the nonconforming use of the property. The decision of the zoning board of appeals was supported by substantial evidence.

Affirmed.

ZONING — ZONING BOARD OF APPEALS — VOTING REQUIREMENTS FOR DETERMINA-
    TIONS — MAJORITY OF THE MEMBERS OF ZONING BOARD OF APPEALS.

The provision of the Zoning Enabling Act that provides that the "concurring vote of a majority of the members of the zoning board of appeals is necessary to reverse an order, requirement, decision, or determination of the administrative official or body, to decide in favor of the applicant on a matter upon which the zoning board of appeals is required to pass under the zoning ordinance, or to grant a variance in the zoning ordinance," unambiguously requires a majority of the members of the zoning board of appeals to concur; concurrence by a majority of the members present at the time the vote is taken but by less than a majority of the total number of members of the board is insufficient (MCL 125.3603[2]).

*Berry Reynolds & Rogowski PC* (by *Susan K. Friedlaender*) for Edw. C. Levy Co. and Levy Indiana Slag Co.

*Kane, Clemons, Joachim and Downey* (by *George J. Joachim*) for the Marine City Zoning Board of Appeals.

*Fletcher Fealko Shoudy & Francis, P.C.* (by *Gary A. Fletcher* and *T. Allen Francis*), for the St. Clair County Road Commission.

*Musilli Brennan Associates, PLLC* (by *Gary E. Gendernalik*), for Detroit Bulk Storage.

Before: WILDER, P.J., and WHITBECK and FORT HOOD, JJ.

PER CURIAM. The Michigan Supreme Court has remanded this case for consideration as on leave granted.[1] Appellants, Edw. C. Levy Co. and Levy Indiana Slag Co., doing business as St. Clair Aggregates (collectively "SCA"), challenge the circuit court's order reversing the decision of appellee, Marine City Zoning Board of Appeals. We affirm.

I. FACTS

The St. Clair County Road Commission (the "Road Commission") owns a 5.98 acre parcel on the St. Clair River in Marine City that it uses for the storage and distribution of aggregate, rock salt, and calcium chloride. In 1999, Marine City rezoned the property from I-2 to Waterfront Recreation and Marine. The property retained its industrial status as a prior nonconforming use.

---

[1] *Edw C Levy Co v Marine City Bd of Zoning Appeals*, 488 Mich 868 (2010).

In 2007, SCA, who owns a deep-water port on adjacent property, approached the Road Commission with a proposal to purchase the Road Commission's river-front property. The Road Commission rejected the proposal, but determined that it could obtain additional revenue by leasing the property to a commercial operator. It published a request for proposals and received proposals from SCA and others. In August 2007, the Road Commission accepted a proposal from Detroit Bulk Storage and entered into a five-year lease of the property.

A condition of the lease was that Detroit Bulk Storage obtain a business license from Marine City. In order for Detroit Bulk Storage to obtain a business license under the city code, the city manager was required to certify that the proposed use was allowed under the zoning ordinance or constituted a prior nonconforming use. Although the city manager originally recommended rejection of the license application, in a November 2007 letter, he certified that the proposed use was allowed. Although the city commission had initially rejected the Detroit Bulk Storage application, it then granted Detroit Bulk Storage a conditional business license.

In January 2008, SCA filed an appeal with the five-member zoning board of appeals, seeking a review of the city manager's certification of the proposed use of the property. The zoning board of appeals held a hearing in March 2008, and denied SCA's appeal—affirming the city manager's decision—by a three-to-two vote. In May 2008, SCA appealed the zoning board of appeals' decision to the St. Clair Circuit Court. The circuit court did not address the merits of the appeal, but held that one of the zoning board of appeals members, who was also a member of the Marine City Commission, should

have recused himself from voting.[2] The circuit court vacated the zoning board of appeals' decision and remanded the matter to the zoning board of appeals for a new vote based on the same record made before the zoning board of appeals at the original March 2008 hearing.

The hearing and new vote by the zoning board of appeals occurred on June 3, 2009. Because of the circuit court's ruling, only four of the five zoning board of appeals members were eligible to vote, and only three members were present for the meeting. At the conclusion of the hearing, the zoning board of appeals voted two-to-one to reverse the city manager's decision and to grant SCA's appeal.

In July 2009, SCA filed an amended claim of appeal in the circuit court, incorporating the latest ruling of the zoning board of appeals. The circuit court ruled that, under MCL 125.3603(2), to prevail in its appeal of the city manager's decision, SCA was required to get votes from a majority of all the zoning board of appeals members, not just those present at the time the vote was taken. And, according to the circuit court, because SCA only received two votes, and not the required three, the city manager's decision was still effective. The circuit court further held that "[b]ased upon the record as produced by the [zoning board of appeals] it [was] clear . . . that each board member considered the facts presented in determining whether the use of the

---

[2] MCL 125.3601(13) provides:

A member of the zoning board of appeals who is also a member of the zoning commission, the planning commission, or the legislative body shall not participate in a public hearing on or vote on the same matter that the member voted on as a member of the zoning commission, the planning commission, or the legislative body. However, the member may consider and vote on other unrelated matters involving the same property.

Road Commission's property by [Detroit Bulk Storage] was an expansion of the pre-existing use." Therefore, the circuit court found that the zoning board of appeals' decision was supported by competent evidence on the record and was not an abuse of discretion. Accordingly, the circuit court affirmed the decision of the zoning board of appeals affirming the city manager's decision that the use was allowed by the zoning. In its final order, the circuit court stated, in relevant part, as follows:

> The 2-1 vote of the Marine City Zoning Board of Appeals on June 3, 2009 was not sufficient to overturn the City Manager's certification of zoning pursuant to which Detroit Bulk Storage was granted a business license as the vote was not supported by a majority of the five members of the Marine City Zoning Board of Appeals.

Meanwhile, at the time this matter was moving back and forth between the zoning board of appeals and the circuit court, the Road Commission filed a rezoning petition, which the Marine City Commission rejected. The Road Commission then filed a second petition for rezoning. A lengthy public hearing before the city commission was held in October 2009. The city commission thereafter granted the rezoning request with conditions, and the parcel is now zoned Heavy Industrial.

In January 2010, SCA filed its application for leave to appeal the circuit court's order. This Court denied the application,[3] and SCA then applied for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court, in lieu of granting leave to appeal, then remanded the case to this Court to consider as on leave granted.

---

[3] Unpublished order of the Court of Appeals, entered May 3, 2010 (Docket No. 296023).

## II. INTERPRETATION OF MCL 125.3603(2)

### A. STANDARD OF REVIEW

SCA argues that the circuit court erred in its interpretation of MCL 125.3603(2). Statutory interpretation is a question of law that we consider de novo on appeal.[4]

### B. LEGAL STANDARDS

MCL 125.3603(2) provides:

> The concurring vote of a majority of the members of the zoning board of appeals is necessary to reverse an order, requirement, decision, or determination of the administrative official or body, to decide in favor of the applicant on a matter upon which the zoning board of appeals is required to pass under the zoning ordinance, or to grant a variance in the zoning ordinance.

### C. APPLYING THE LEGAL STANDARDS

The unambiguous language of MCL 125.3603(2) requires a majority of the members of the zoning board of appeals to reverse the certification granted by the city manager. Thus, three members out of the five members of the zoning board of appeals had to vote to reverse the city manager's certification. The vote of *two* members to reverse the city manager's certification at the June 3, 2009, hearing was simply insufficient to do that. Contrary to SCA's contentions, the statute is not ambiguous: "a majority of the members of the zoning board of appeals" means just that. Where there are five members, a majority of the members of the zoning board of appeals is three. The Legislature is capable of indicating when it intends a different result, such as in the state

---

[4] *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

construction code where it added the language "present at a meeting"[5] to allow the sort of quorum voting that SCA argues constituted a majority here. Accordingly, we conclude that the trial court did not err in its interpretation of MCL 125.3603(2).

### III. SUBSTANTIAL EVIDENCE

#### A. STANDARD OF REVIEW

SCA argues that the circuit court erred by holding that the zoning board of appeals' decision to deny SCA's appeal was supported by substantial evidence. "This Court reviews de novo a [circuit] court's decision in an appeal from a city's zoning board, while giving great deference to the [circuit] court and zoning board's findings."[6]

#### B. LEGAL STANDARDS

A circuit court reviews the decision of a zoning board of appeals to ensure that it:

(a) Complies with the constitution and laws of the state.

(b) Is based upon proper procedure.

(c) Is supported by competent, material, and substantial evidence on the record.

(d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.[7]

" 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evi-

---

[5] See MCL 125.1503a(2).

[6] *Norman Corp v East Tawas*, 263 Mich App 194, 198; 687 NW2d 861 (2004).

[7] MCL 125.3606(1).

dence, it may be substantially less than a preponderance."[8] Under the substantial-evidence test, the circuit court's review is not de novo and the court is not permitted to draw its own conclusions from the evidence presented to the administrative body. Courts must give deference to an agency's findings of fact.[9] When there is substantial evidence, a reviewing court must not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result.[10] A court may not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record.[11]

### C. APPLYING THE LEGAL STANDARDS

We note that SCA first appears to argue that because only one vote was cast at the June 3, 2009, meeting in favor of the certification, that position bears a heavier burden of proof than it would if it were the majority position. However, SCA fails to recognize that only two votes were ever cast at the meeting against certification. Therefore, nothing more than the standard burden of "substantial evidence" is required.

Moreover, we conclude that the circuit court did not err by holding that substantial evidence supported the zoning board of appeals' denial of SCA's appeal. An existing nonconforming use is a vested right in the use of particular property that does not conform to zoning

---

[8] *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998).

[9] *THM, Ltd v Comm'r of Ins*, 176 Mich App 772, 776; 440 NW2d 85 (1989).

[10] *Black v Dep't of Social Servs*, 195 Mich App 27, 30; 489 NW2d 493 (1992).

[11] *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994) (opinion by Boyle, J.).

restrictions, but is protected because it lawfully existed before the zoning regulation's effective date.[12] Nonconforming uses may not generally be expanded, and one of the goals of local zoning is the gradual elimination of nonconforming uses.[13] The policy of the law is against the extension or enlargement of nonconforming uses, and zoning regulations should be strictly construed with respect to expansion.[14] The continuation of a nonconforming use must be substantially of the same size and the same essential nature as the use existing at the time of passage of a valid zoning ordinance.[15] Moreover, the nonconforming use is restricted to the area that was nonconforming at the time the ordinance was enacted.[16] Nonconforming use involves the physical characteristics, dimensions, or location of a structure, as well as the use of the premises.[17]

Here, there was no competent evidence that the traffic and hours of operation would, in fact, increase as a result of Detroit Bulk Storage's use. Although the lease anticipated that a certain minimum tonnage of materials would be stored and handled, whether this quantity would exceed what the Road Commission had used is, again, unsupported by any evidence. Neighbors stated there was more truck traffic, but whether these were Detroit Bulk Storage's trucks, Road Commission trucks, SCA's trucks, or some other vehicles was not documented. Likewise, although the lease stated the

[12] *Belvidere Twp v Heinze*, 241 Mich App 324, 328; 615 NW2d 250 (2000).

[13] *City of Troy v Papadelis (On Remand)*, 226 Mich App 90, 95; 572 NW2d 246 (1997).

[14] *Norton Shores v Carr*, 81 Mich App 715, 720; 265 NW2d 802 (1978).

[15] *Id.*

[16] *Id.*

[17] *Long Island Court Homeowners Ass'n v Methner*, 74 Mich App 383, 387; 254 NW2d 57 (1977).

hours of operation, there was no evidence that Detroit Bulk Storage fully used the available hours or that the hours of operation were any different from the Road Commission's hours of operation. SCA's argument asserts that there was an expansion of the hours of operation, but points to nothing other than the terms of the lease as evidence of expansion.

The lease involved contingencies, not facts, regarding the amounts of material to be processed there and the hours of operation. Counsel for Detroit Bulk Storage identified facts showing that the Road Commission had used the property for the bulk storage of materials such as stone and salt and that that was what Detroit Bulk Storage was using the land for; it was the same activity, only now being carried out by two different operators. There was no record of how many tons had been stored over the years, and Detroit Bulk Storage's acts to date had consisted only of putting down an asphalt drive and improving the wiring in a building. Nor was there evidence that the tonnage allowed under the lease would actually be a significant increase over the Road Commission's prior use. Accordingly, applying the definition of "substantial evidence," we conclude that the circuit court did not err by holding that the zoning board of appeals' decision was supported by such evidence.

We affirm.

WILDER, P.J., and WHITBECK and FORT HOOD, JJ., concurred.